UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| BRIDGET A. A.,[1] | Case No. 5:20-cv-01163-JDE |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| ANDREW SAUL,<br>Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Bridgett A. A. ("Plaintiff") filed a Complaint on June 8, 2020, seeking review of the Commissioner's denial of her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The parties filed a Joint Submission ("Jt. Stip.") regarding the issues in dispute on May 18, 2021. The matter now is ready for decision.

---

[1] Plaintiff's name has been partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.

# BACKGROUND

Plaintiff protectively filed for DIB and SSI on February 24, 2017, alleging disability commencing November 14, 2016. AR 1092, 1255-59, 1261-69. On February 21, 2019, after her applications were denied (AR 1136-37, 1158-59), Plaintiff, represented by counsel, appeared in Moreno Valley, California, and testified via video before an Administrative Law Judge ("ALJ") presiding in Albuquerque, New Mexico. AR 16, 1090-1105, 1114-15. A vocational expert ("VE") also testified telephonically. AR 16, 1092, 1105-1113.

On June 6, 2019, the ALJ found Plaintiff was not disabled. AR 16, 19-33.[2] The ALJ found Plaintiff met the insurance status requirements of the Social Security Act ("SSA") through March 31, 2022. AR 21. Although Plaintiff received earnings in 2017, the ALJ found, in an abundance of caution, that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. AR 22. The ALJ concluded Plaintiff has the following severe impairment: "residual effects status-post right hip surgeries." AR 22-24. The ALJ also found Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment (AR 24-25), and she has the RFC to perform light work[3] except (AR 25):

---

[2] Portions of the AR, including the ALJ's decision, appear out of order.

[3] "Light work" is defined as
lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b), 416.967(b); see also Aide R. v. Saul, 2020 WL 7773896, *2 n.6 (C.D. Cal. Dec. 30, 2020).

[Plaintiff] can only frequently operate foot controls, bilaterally. [Plaintiff] can only occasionally climb ramps, stairs, ladders, ropes, or scaffolds. Additionally, [Plaintiff] can only frequently balance or stoop, but can only occasionally kneel, crouch, or crawl. Similarly, [Plaintiff] can only frequently be required to work in conditions of unprotected height, with moving mechanical parts, in conditions of extreme cold, with vibration, or with dust, odors, fumes, and other pulmonary irritants. Lastly, [Plaintiff] is limited to working in conditions of moderate noise.

The ALJ next found that Plaintiff was unable to perform her past relevant work as a Child Monitor (Dictionary of Occupational Titles ["DOT"] 301.677-010) or General Merchandise Salesperson (DOT 279.357-054). AR 29-30. The ALJ also found that Plaintiff, at 37 years old on the alleged onset date, is defined as a younger individual. AR 30. The ALJ further found that Plaintiff has at least a high school education[4] and can communicate in English. AR 31.

The ALJ then found that, if Plaintiff had the RFC to perform a full range of light work, a Medical-Vocational rule would direct a finding of not disabled. AR 31. But, as Plaintiff's ability to perform the requirements of light work was impeded by additional limitations, the ALJ consulted the testimony of the VE. AR 31. Considering Plaintiff's age, education, work experience, RFC, and the VE's testimony, the ALJ concluded Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, including: Lamp-shade Assembler (DOT 739.684-094), Lens-block Gauger (DOT 716.687-030), and Call-out Operator (DOT 237.367-014). AR 31-33. Thus, the ALJ found Plaintiff was not under a "disability," as defined in the SSA, from the alleged onset date through the date of the decision. AR 33.

---

[4] Plaintiff explained at her hearing that she has "[s]ome college." AR 1093.

Plaintiff submitted further evidence to the Appeals Council and sought review of the ALJ's decision. AR 2. The Appeals Council found the evidence that fell within the relevant period did not show a reasonable probability that it would change the outcome. AR 2. Regarding evidence dated after the ALJ's decision, the Appeals Council instructed that Plaintiff could file a new claim to obtain review of that evidence. AR 2. Accordingly, the Appeals Council denied review, making the ALJ's decision the agency's final decision. AR 1-7.

## II.
## LEGAL STANDARDS

**A.      Standard of Review**

Under 42 U.S.C. § 405(g), this court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id.

To assess whether substantial evidence supports a finding, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences

4

reasonably drawn from the record."), superseded by regulation on other grounds as stated in Thomas v. Saul, 830 F. App'x 196, 198 (9th Cir. 2020).

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless (Molina, 674 F.3d at 1115), that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

**B.      The Five-Step Sequential Evaluation**

When a claim reaches an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Ford v. Saul, 950 F.3d 1141, 1148-49 (9th Cir. 2020); Molina, 674 F.3d at 1110.

First, the ALJ considers whether the claimant currently works at a job that meets the criteria for "substantial gainful activity." Molina, 674 F.3d at 1110. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015). If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from her impairments. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Social Security Ruling ("SSR") 96-8p.

After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform her past

relevant work, either as she "actually" performed it when she worked in the past, or as that same job is "generally" performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016). If the claimant cannot perform her past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, she is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See id. at 1099.

The claimant generally bears the burden at steps one through four to show she is disabled or meets the requirements to proceed to the next step and bears the ultimate burden to show she is disabled. See, e.g., Ford, 950 F.3d at 1148; Molina, 674 F.3d at 1110. However, at Step Five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

## III.

## DISCUSSION

The parties present two disputed issues, reordered as (Jt. Stip. at 4):

Issue No. 1: Did the ALJ properly consider Plaintiff's testimony concerning pain, symptoms, and level of limitation[5]; and

---

[5] Before the ALJ's decision, SSR 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p provides that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character" and requires that the ALJ consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. Id.; see also Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th

6

Issue No. 2: Did the ALJ properly evaluate the treating physician opinion.

**A.  Subjective Symptom Testimony**

In Issue No. 1, Plaintiff contends that the ALJ improperly assessed her subjective testimony regarding her pain, symptoms, and level of limitation. Jt. Stip. at 4, 14-18

**1.  Applicable Law**

Where a claimant produces objective medical evidence of an impairment that could reasonably be expected to produce the pain or other symptoms alleged, absent evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations and internal quotation marks omitted); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude that the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885 (citation omitted). But if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the Court's role to "second-guess" it. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Finally, the ALJ's finding may be upheld even if not all the ALJ's reasons for rejecting

---

Cir. 2017) (as amended). Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2016 WL 1119029, at *10. SSR 16-3p's elimination of the word "credibility" from the Agency's subjective-symptom evaluation "does not, however, alter the standards by which courts will evaluate an ALJ's reasons for discounting a claimant's testimony." Elizabeth B. v. Comm'r Soc. Sec., 2020 WL 1041498, *3 (W.D. Wash. Mar. 4, 2020).

7

the claimant's testimony are upheld. See Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004).

### 2. Hearing Testimony

The February 2019 hearing is summarized as follows. Plaintiff last worked in 2016 as a nanny. AR 1094. That job ended when a family member moved in to watch the kids and she was no longer needed to watch them. Id.

After the nanny position, through Redlands Agency, she found a job working for a sign company that made LED light boards. AR 1094. That work eventually became too difficult for her because it required standing for long periods of time, so she quit. AR 1094-95.

After the sign company, she continued to look for employment but could not find anything. AR 1095. Then she began having pain in her right thigh, limiting her ability to sit and stand. AR 1095. She continued to search for full-time employment through the Agency and on her own by searching the internet. AR 1095-96. She looked for customer service and nanny positions. AR 1096. Although she did not receive any offers, if she had, she would have tried to work. AR 1096. She also received unemployment benefits for about a year in 2017 and then other disability benefits. AR 1095-96. Even if she had accepted employment, she does not know how long she would have lasted due to the pain, "but [she] would have at least tried." AR 1096. In the customer service positions, she believes sitting for long periods of time "would have really hurt [her]." Id. She stopped looking for work in early 2018. AR 1097. She was experiencing a lot of pain at the time and medical professionals discovered her prosthetic was loose and she therefore needed surgery. Id.

Plaintiff lives with her mother and grandmother in a senior mobile home park. AR 1097. She was permitted to stay there, even though it is reserved for residents 55 and over, so she could recover from surgery. Id.. She is trying to move out but lacks funds to do so. Id.

In the morning, she can get up, get out of bed, and clean and dress herself without help from her mother or grandmother. AR 1098. It takes her a while to get out of bed because she has limited movement and stiffness in the morning; after arising, she generally stays in the mobile home because it's comfortable. Id. She will stay there unless she needs to go to the grocery store or places like that. AR 1099. She can drive and drove to the hearing. AR 1093.

Plaintiff has two kids, ages seven and eleven, and she does her best to cook for them and do their laundry. AR 1098-99. She shares custody of her children with her ex-husband. AR 1098. They are with her every other week. AR 1098-99. When Plaintiff's legs hurt, her mother will sometimes take the children to school. AR 1099. If her mother is not feeling well, Plaintiff will get up and take them, and pick them up later. Id.

To pass time, Plaintiff watches movies or TV, but she mostly just lays in her mother's bed once her mother gets up. AR 1100. Plaintiff uses her mother's bed because it is electric and can lift her head up. Id.

Plaintiff's doctor said she cannot yet resume physical therapy, indicating that she needs more time to recover. AR 1100. Her doctor said she should start after six weeks, but, as of the hearing, it had been seven weeks and he said she is still not ready. AR 1101. At this point, her doctor just wants her to walk daily to keep her leg moving. AR 1100. If she walks for longer than 10 or 15 minutes, however, the nerves in her leg cause pain. AR 1101. Plaintiff still uses a crutch when she walks due to weakness on her side. AR 1101-02. She brought the crutch to the hearing. AR 1102.

Plaintiff's main problem preventing her from working full time is sitting and standing for long periods because it "causes the nerves and the muscles to go off," causing pain. AR 1101. She can sit or stand for about 10 to 15 minutes. Id. If she visits the mall or somewhere that will require too much walking, she will use a wheelchair. AR 1102. She does not think she could

9

walk a city block, but she can walk about 15 minutes in the grocery store. Id. Plaintiff also has difficulty driving long distance. Id. Further, Plaintiff has migraine headaches, about three a month, that affect her ability to work because she has to take time off to control them. Id. Medication sometimes helps her migraines. AR 1103.

Plaintiff has had six surgeries and a revision in 2015. AR 1103. She is prone to dislocations, and her surgeries have been related to those repeated dislocations. AR 1104. In terms of future treatment, doctors have only recommended physical therapy when she is ready. AR 1104.

### 3. Analysis

The ALJ provided a summary of Plaintiff's testimony and found her medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements "concerning the intensity, persistence[,] and limiting effects of [the] symptoms" were not entirely consistent with the medical evidence and other evidence in the record. AR 25-26, 28. The ALJ found Plaintiff's subjective complaints inconsistent with: (1) her daily activities and stated abilities; (2) the objective evidence; (3) findings that she was ambulatory without assistance; (4) failure to follow treatment recommendations; and (5) other inconsistent statements. AR 26-28.

To start, the Court notes the ALJ did not reject Plaintiff's testimony in full but found it "not entirely" consistent with the record, constrained the RFCs to a limited range of light work, including limiting Plaintiff's physical abilities and her working environment. AR 25, 28. Those determinations necessarily partially credited Plaintiff's subjective complaints. To the extent the ALJ did not fully credit Plaintiff's complaints, at least four of his reasons for doing so were legally sufficient.

First, the ALJ listed several of Plaintiff's activities of daily living, such as her stated ability during the hearing to walk the grocery store without needing a

wheelchair, sit up in bed to watch television and movies for the duration of the day, drive her children to and from school, cook for them, and do their laundry. AR 26-27. The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her [testimony] as to her overall disability."). However, some activities, such as childcare, may support an ALJ's decision when it can be determined that they are performed for a substantial part of the day. See, e.g., Rollins, 261 F.3d at 857 (the ability to care for children may undermine complaints of severe limitations); Morgan v. Apfel, 169 F.3d 595, 600 (9th Cir. 1999) (claimant's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child was evidence of claimant's ability to work); Elizondo v. Astrue, 2010 WL 3432261, *5 (E.D. Cal. Aug. 31, 2010) ("A claimant's performance of chores such as preparing meals, cleaning house, doing laundry, shopping, occasional childcare, and interacting with others has been considered sufficient to support an adverse finding when performed for a substantial portion of the day." (citing Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008)).

Here, it is unclear if the ALJ's discussion of Plaintiff's activities was intended to be a reason discounting the testimony. Notably, the Commissioner does not attempt to defend it. Moreover, the ALJ did not make any findings regarding the frequency of Plaintiff's activities or their transferability to the workplace. See Martinez v. Berryhill, 721 F. App'x 597, 600 (9th Cir. 2017)

(ALJ improperly "discounted [claimant]'s testimony based on her daily activities . . . [without] support[ing] the conclusions as to the frequency of those activities or their transferability to the workplace."); Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (ALJ must make "specific findings related to [the daily] activities and their transferability to conclude that a claimant's daily activities warrant" discounting testimony); Swanson v. Colvin, 2017 WL 8897144, *21 (D. Ariz. Feb. 7, 2017) (claimant's daily activities of "simple meal preparation, light housekeeping, driving short distances, and caring for her children are so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace" (internal quotation marks omitted)). Accordingly, the Court concludes that the ALJ did not provide a sufficiently specific, clear, and convincing reasons for discounting Plaintiff's testimony in his discussion of her daily activities. See Lambert, 980 F.3d at 1277.

Second, the ALJ provided a detailed summary of the medical evidence of record and noted that it documented findings "generally" unsupportive of Plaintiff's claim of disability. AR 26. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony," it is a factor that the ALJ can consider in his analysis. Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005); see also Rollins, 261 F.3d at 857. For example, the ALJ pointed to the various examinations and findings where Plaintiff had no tenderness, full and painless range of motion in lower extremities, and no edema, clubbing, or other issues. AR 27, 1379, 1401-02, 1436, 1438-39, 1441-42, 1446-47, 1450, 1453, 1457, 1470, 1478-79, 1487, 1494-95, 1501, 1506 (following surgery, "[d]isposition home in stable condition"); 1509 (noting mild swelling and tenderness following surgery, but Plaintiff in "[n]o distress"), 1691 ("reports doing overall well"; denies any numbness, tingling, weakness, or stiffness), 1728 (appears generally "in no distress"; "extremities normal"; neurologic "[g]rossly normal"), 1730-32, 1749 ("[d]enies [a]dditional musculoskeletal

pain"), 1753 (normal findings) 1754 (noting multiple "well-healed and well[-]appearing surgical scars over right hip" and Plaintiff "in no apparent distress . . . smiling"). Plaintiff contends the ALJ unreasonably determined this evidence was inconsistent with her testimony in light of other medical records, claiming the ALJ ignored certain evidence in his detailed discussion. Jt. Stip. at 17. However, as mentioned, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [the Court] may not substitute our judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006); Reddick, 157 F.3d at 725 (ALJ can satisfy substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings"). The ALJ properly considered the inconsistency between the objective medical findings and Plaintiff's subjective allegation of disability as one of other valid factors supporting the decision. See Burch, 400 F.3d at 681.

Third, the ALJ noted Plaintiff testified about the need for an assistive device, but other evidence showed she was ambulatory without assistance and negative for a gait problem. AR 27, 1101-02. This reason is supported by the record. AR 27, 1378-79 (report of "normal gai[t] problem," normal examination of lower extremities), 1441 (negative for gait problem despite complaints of knee giving out; Plaintiff "is ambulatory without assistance"), 1442 ("[g]ait is steady without assistive device") 1447 (normal examination of lower extremities including range of motion, with only tenderness noted), 1458 ("[n]egative for gait problem and joint swelling"); See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (an ALJ may consider a variety of factors in weighing a claimant's believability, including ordinary techniques of credibility evaluation, prior inconsistent statements, and testimony by the claimant that "appears less than candid"). The ALJ could therefore properly consider this factor. See Colter v. Colvin, 554 F. App'x 594, 596 (9th Cir. 2014) (ALJ

properly discounted claimant's credibility based on her own admissions and inconsistency between her testimony, descriptions of her abilities, and medical tests); Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (in analyzing pain complaints, ALJ may consider inconsistencies between testimony and conduct). While other records show Plaintiff at times needed assistance, see, e.g., AR 1808 ("SBA [stands by assist] for gait" with crutches but demonstrates "good step to sequencing"), where the evidence is susceptible to more than one interpretation, "one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954; Molina, 674 F.3d at 1111.

Fourth, the ALJ noted occasions where Plaintiff failed to follow treatment recommendations, notably she refused to attend some physical therapy and take medication. AR 27, 1449-50 (Plaintiff tripped, fell, and tore meniscus, but did not "take any pain medications" because she preferred not to feel groggy (emphasis added)), 1457 (Plaintiff states she "doesn't like to take pills"; "Norco helps" she but takes it inconsistently),1459 (refused referral to physical therapy), 1691 (Plaintiff "[d]oes not exercise"); 1808 (declined physical therapy "stair training"), 1810 (same). The ALJ properly considered this factor. See Molina, 674 F.3d at 1112 ("the ALJ may consider . . . unexplained or inadequately explained failure . . . to follow a prescribed course of treatment"); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (in analyzing claimant's pain, ALJ may consider inadequately-explained failure to seek treatment or follow prescribed treatment); 20 C.F.R. §§ 404.1530, 416.930 (claimants must "follow treatment prescribed by [their] medical source(s) if this treatment is expected to restore [their] ability to work").

Fifth, and relatedly, the ALJ noted that although Plaintiff alleged physical therapy did not help, when she attended, it did. AR 27, 1457 (Plaintiff states physical therapy "did not work"), 1808 (Plaintiff "did not complain of pain" during physical therapy), 1810 (same), 1809-10 (goals met in physical

14

therapy). The ALJ properly considered Plaintiff's inconsistent statements in assessing her testimony. See Ghanim, 763 F.3d at 1163; Colter, 554 F. App'x at 596; Thomas, 278 F.3d at 958-59.

The Court finds that, even if Plaintiff's activities of daily living do not support the ALJ's determination, the ALJ nonetheless provided other sufficiently specific, clear, and convincing reasons for finding Plaintiff's testimony not entirely consistent with the record, that is the conflict with the objective evidence, findings regarding her ambulatory ability, failure to follow treatment recommendations, and other inconsistent statements. See Reyes v. Berryhill, 716 F. App'x 714, 714 (9th Cir. 2018) (where ALJ provided valid reasons for discounting claimant's testimony, "[a]ny error in other reasons provided by the ALJ was harmless"); Batson, 359 F.3d at 1197; Williams v. Comm'r, Soc. Sec. Admin., 2018 WL 1709505, *3 (D. Or. Apr. 9, 2018) ("Because the ALJ is only required to provide a single valid reason for rejecting a claimant's pain complaints, any one of the ALJ's reasons would be sufficient to affirm the overall . . . determination."). Those grounds are sufficient to affirm the ALJ's decision on the issue.

## B. Opinion Evidence

In Issue No. 2, Plaintiff contends the ALJ improperly evaluated the opinion of her treating physician Dr. Mark A. Newman. Jt. Stip. at 4-9.

### 1. Applicable Law

In setting an RFC, an ALJ must consider all relevant evidence, including medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributable to the medical condition." Robbins, 466 F.3d at 883 (citation omitted); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ must also consider all the medical opinions "together with the rest of the relevant evidence [on record]." 20 C.F.R. §§ 404.1527(b), 416.927(b).

15

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Id. "[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons" supported by substantial evidence in the record. Carmickle v. Comm'r Sec. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 1164 (citation omitted).

An ALJ is not obligated to discuss "every piece of evidence" when interpreting the evidence and developing the record. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation omitted). Similarly, an ALJ is also not obligated to discuss every word of a doctor's opinion or include limitations not actually assessed by the doctor. See Fox v. Berryhill, 2017 WL 3197215, *5 (C.D. Cal. July 27, 2017); Howard, 341 F.3d at 1012. Finally, the ALJ is not required to recite "magic words" or "incantations" to reject an opinion. Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989). "A reviewing court [is] not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." Id.; Towne v. Berryhill, 717 F. App'x 705, 707 (9th Cir. 2017) (citing Batson, 359 F.3d at 1193 (if the ALJ provides enough information that the reviewing court can draw reasonable inferences from the record in support of the ALJ's findings, then the ALJ's findings should be upheld)).

## 2. Analysis

In March 2017, Dr. Newman filled out a page-and-a-half, mostly check-box, "Physical Assessment" form. AR 1427. He indicated Plaintiff's diagnosis was "failed right total hip replacement, hamstring tendonitis," and opined that Plaintiff's symptoms were severe enough to interfere with her attention and concentration "constantly." AR 1427. He marked "N/A" for medication side effects impacting her capacity to work. AR 1427. Dr. Newman further indicated that Plaintiff needed to lie down, could only walk less than one block, sit/stand/walk for only one-hour a day, and frequently lift less than 10 pounds, occasionally lift 10-20 pounds, but never 50 pounds or more. AR 1427. Finally, he indicated that Plaintiff would miss work more than four times a month because of her impairments or treatments. AR 1428.

The ALJ stated he considered Dr. Newman's opinion, summarized it, found it was partially consistent with the RFC, but gave little weight to the more extreme functional limitations, such as the need to lie down during the day or take 30 minute breaks every hour, finding them "far more restrictive and inconsistent" with Plaintiff's functional capacity shown in other examinations. AR 28-29. Instead, the ALJ afforded greater weight to the other, less restrictive, opinions in the record. AR 28.

The ALJ conducted a proper assessment of Dr. Newman's opinion.

Preliminarily, the Court notes that the ALJ did not reject Dr. Newman's opinion entirety as Plaintiff suggests. See Jt. Stip. at 4 ("The ALJ rejected Dr. Newman's opinion"). By assigning the opinion "little" weight instead of "no" weight, the ALJ necessarily gave consideration and credited aspects of the opinion. AR 28-29. The ALJ specifically found aspects of the opinion consistent with Plaintiff's RFC, a point Plaintiff does not contest. AR 29; see, e.g., Waldner v. Colvin, 2015 WL 711020, at *6 (D. Or. Feb. 18, 2015) (no error in RFC finding that specifically included limitations tailored to claimant).

17

To the extent the ALJ did not accept the more-restrictive physical limitations, such as the need to take unscheduled, 30-minute breaks every hour, totaling 240 minutes in a workday, he gave proper reasons for doing so. The ALJ found that limitation far more restrictive and inconsistent than Plaintiff had demonstrated on other examinations. That objective evidence, discussed above, properly supported the ALJ's reasoning. See, e.g., Shavin v. Comm'r Soc. Sec. Admin., 488 F. App'x 223, 224 (9th Cir. 2012) (ALJ may reject physician's opinion by "noting legitimate inconsistencies and ambiguities in the doctor's analysis or conflicting lab test results[ or] reports . . ." (internal citation omitted)); Aranda v. Comm'r Soc. Sec. Admin., 405 F. App'x 139, 141 (9th Cir. 2010) (persuasiveness of physician's opinion must take into account the opinion's consistency with the record as a whole, among other factors).

The ALJ also discussed the other medical opinions and assigned them great weight. AR 28. For example, the ALJ discussed Dr. Yu's March 2019 consultative examination and opinion, occurring just three months after Plaintiff's last surgery. AR 1813-23. Dr. Yu opined that Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently; walk/stand/for four hours in an eight-hour day; sit for six hours in an eight-hour day; walk without the an assistive device, except long distances where she "may require the use of a cane"; perform occasional postural activities including bending, crouching, stooping, and crawling; walk on uneven terrain, climb ladders, and work at heights occasionally; and finger, handle, feel, and reach without limitation. AR 1816-17. Dr. Yu indicated he reached his conclusion based on formal testing, as well as direct observation of Plaintiff during the examination. AR 1817. The ALJ properly considered the conflict between Dr. Newman's opinion and Dr. Yu's opinion, in assessing the opinions, assigning weight, and fashioning the RFC. See Ford, 950 F.3d at 1156 (conflicting medical professional findings a valid consideration in discounting an opinion); Batson, 359 F.3d at 1197 ("[I]t

18

was permissible for the ALJ to give [opinions] minimal evidentiary weight, in light of . . . opinions and observations of other doctors.").

The ALJ also discussed the findings of the State Agency doctors, all of whom concluded Plaintiff could work, and assigned them great weight. AR 28, 1121-35, 1138-57. Plaintiff does not address these opinions, and they are additional substantial evidence supporting the ALJ's reasoning. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (per curiam) ("We have held that the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings."); Kane v. Colvin, 2015 WL 5317149, *3 (E.D. Cal. Sept. 10, 2015) (ALJ properly rejected treating physician's opinion in part because it was contradicted by state agency physicians' findings).

The Court finds that the ALJ did not err in his assessment of Dr. Newman's opinion. Accordingly, reversal is not warranted.

## IV.
## ORDER

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

Dated: June 25, 2021

_____
JOHN D. EARLY
United States Magistrate Judge